# AFFIDAVIT

Your affiant, Paul Hursey, is employed as a Special Agent of the Drug Enforcement Administration (DEA), and has been so employed since August of 1999. Your affiant renders this affidavit in support of a criminal complaint against **Quincy Demon HOOVER**. Your affiant is aware of the following facts and circumstances.

1. Affiant and other agents with the DEA Shreveport Resident Office have been conducting an investigation, since approximately June 2012, regarding the illegal drug trafficking activities of **Shannon D'Lario JENKINS** and his drug distribution organization, which includes one of his sources of supply **Quincy HOOVER**.

2. On April 28, 2014, a Title III wire and electronic communications intercept was signed for telephone number (318) 265-2843 by Judge S. Maurice Hicks, Jr., in the Western District of Louisiana. That number was utilized by **Shannon JENKINS**.

3. On April 30, 2014, at approximately 4:42 p.m., **JENKINS** received a call from cellular telephone (318) 332-3850, a cellular telephone utilized by **Quincy Demon HOOVER** (session #536). **JENKINS** asked **HOOVER** when he was "leaving out" to which **HOOVER** replied tomorrow night (May 1, 2014). **JENKINS** told **HOOVER** before he left **JENKINS** needed to get "those two books to read from you." **HOOVER** said that was possible and the two agreed they would talk the next day.

4. On April 30, 2014, at approximately 7:15 p.m., JENKINS received a second call from (318) 332-3850 (session #571). JENKINS told HOOVER that JENKINS' brother (Carlos JENKINS) wanted him to call HOOVER regarding "them boys up this way trying to get the grass cut." HOOVER told JENKINS there was going to be a slight delay on that because he was "checking out man it wasn't the color...it needed to be man" and that HOOVER "wasn't trying to grab nothing man." HOOVER then made reference about the beginning of the week and a shipment that was supposed to be in. HOOVER repeated the comment about not trying to grab just anything and stated "'cause shit be coming through but it don't be what it supposed to be." JENKINS told HOOVER he would let his brother know what HOOVER said. Your affiant believes the two phone calls between JENKINS and HOOVER noted above was JENKINS ordering two kilograms of cocaine from HOOVER and the next day HOOVER told JENKINS there was going to be a delay because of the poor quality of the cocaine HOOVER had observed.

5. On May 4, 2014, at approximately 1:29 p.m., JENKINS received a call from HOOVER. HOOVER told JENKINS "they was telling me that they be at Clark's in about ten or fifteen minutes." JENKINS told HOOVER he was having his truck detailed but he would send his brother to deliver the money.

6. At approximately 1:31 p.m., JENKINS made an outgoing phone call to (318) 480-1395, a phone believed to be utilized by JENKINS' brother, Carlos Cornelius JENKINS. Shannon JENKINS told Carlos JENKINS "go back

there and get that bread (U.S. currency) out that, out of my closet back there, it's in the hood of that jacket in there." **Carlos JENKINS** agreed and **Shannon JENKINS** told **Carlos JENKINS** "And take it up there to Clark's, take it up there to that store, give to uh...Q's cousin for me. It's a little bread I had owed for that other batch." **Shannon JENKINS** and **Carlos JENKINS** further discuss the location of the money and the denominations. At approximately 1:34 p.m., **Shannon D'Lario JENKINS** called **HOOVER** and told **HOOVER** "My bro got it, he fixing to get up there, which store?" **HOOVER** replied they would be at Clark's and they would be in a white Expedition.

7. On May 4, 2014, at approximately 2:46 p.m., agents observed an unknown black female, later identified as **Quwanda FOREST**, arrive at the Clark's Convenience Store located at 959 RWE Jones Street, Grambling, Louisiana. **FOREST** was driving a white 2008 Ford Expedition bearing Texas license plate number CVD9641, which was registered to **Quincy Demon HOOVER**, 730 West Davis Street, Dallas, Texas. At approximately 2:52 p.m., agents observed **Carlos JENKINS** in the parking lot of Clark's parked parallel to the white Ford Expedition. Agents observed **Carlos JENKINS** exit his vehicle and walk to the opened driver's side door of the white Ford Expedition. Agents observed **Carlos JENKINS** reach into the front of his pants and extend his arms into the Ford Expedition toward **FOREST**. It appeared to agents that **Carlos JENKINS** was giving something to **FOREST**. At approximately 2:53 p.m., **JENKINS** received a call from **HOOVER**. **JENKINS** told **HOOVER**

"Yeah um my bro just called me and said he been sitting up there and said he had to go and run and meet somebody he gotta go or something he said he been up around there since 2:28." **HOOVER** replied "Yeah he was sitting, he was right there behind her the whole time" and further stated "yeah he handled it already."

8. Surveillance followed the white Expedition to the area of Highway 6 and Louisiana 3175 where surveillance was lost. Approximately 20 to 30 minutes later surveillance observed the white Ford Expedition arrive at 384 Main Street, Natchez, Louisiana.

9. On Sunday, May 11, 2014, **JENKINS** received an incoming call (Session #1781) from **HOOVER**. During the conversation, **HOOVER** told **JENKINS**, "They said it would be tonight when they make it." **JENKINS** replied, "Okay." Your affiant believes **HOOVER** was telling **JENKINS**, **HOOVER's** cocaine source of supply would arrive in the Houston, Texas on the night of May 11, 2014.

10. On May 12, 2014, at 10:46 a.m., **JENKINS** received an incoming text from **Quincy HOOVER**, (Session 2086) "We good hit in a min getting up." Agents determined, from a court ordered GPS ping on **Quincy HOOVER's** cellular telephone, **HOOVER** was in the vicinity of 19211 Opul Trails Court, in Richmond, Texas.

11. At 4:16 p.m., **HOOVER's** GPS ping showed **HOOVER** was in Cleveland, Texas traveling north on U.S. 59. At 4:30 p.m. the GPS ping showed

HOOVER was in Livingston, Texas traveling east on U.S. 190. According to the GPS ping on HOOVER's phone, HOOVER traveled on U.S. 190 to Jasper, Texas.

12. At 10:11 p.m., HOOVER's GPS ping showed HOOVER was traveling east on Louisiana Highway 508 east of Bienville, Louisiana. At 10:23 p.m., JENKINS received the following text message from HOOVER, (Session 2260) "Coming up on you." At 10:52 p.m., JENKINS received an incoming call from HOOVER (Session 2273). HOOVER asked JENKINS, "is he there." meaning was JENKINS' brother Carlos JENKINS there. JENKINS replied he was. HOOVER requested to talk with Carlos JENKINS. Shannon JENKINS gave the phone to Carlos JENKINS and HOOVER told Carlos JENKINS he dropped off a "ten piece at Carlos' boy's house." Carlos JENKINS replied, "okay" then told HOOVER he would probably pick it up in the morning. Carlos JENKINS gave the phone back to Shannon JENKINS and HOOVER told Shannon JENKINS, "I'm coming up, I'm right here in Grambling."

13. Surveillance personnel observed a white Ford F-150 traveling north on RWE Jones Street in Grambling at 11:02 p.m. At the intersection of RWE Jones Road and Garr Road the vehicle turned west onto Garr Road, towards JENKINS' residence. At 11:14 p.m., JENKINS received an incoming call from HOOVER (Session 2275). JENKINS asked HOOVER "what's the number gonna be?" HOOVER told JENKINS "three one five." JENKINS replied "okay

it's 94 dollars and five cents on the gas?" HOOVER replied "yeah." Based on the conversation your affiant believes JENKINS obtained three kilograms of cocaine from HOOVER at a price of $31,500.00 per kilogram making JENKINS total bill with HOOVER $94,500.00.

14. At approximately 11:20 p.m., surveillance observed the white Ford F-150 a short distance from JENKINS' residence traveling east on Garr Road. The vehicle traveled to the Chevron gas station located at 959 RWE Jones Street, Grambling, Louisiana. Agents observed a black male exit the vehicle and enter the Chevron. Agents obtained the vehicle's Texas license plate number, BW32806. The vehicle, a white 2012 Ford F-150 truck, was registered to **Quincy D. HOOVER**, at 4423 Charriton, Houston, Texas 77039.

15. On May 28, 2014, a Title III wire and electronic communications intercept extension was signed for telephone number (318) 548-5620 by Judge S. Maurice Hicks, Jr., in the Western District of Louisiana. That number was utilized by **Shannon D'Lario JENKINS**.

16. On June 4, 2014, **HOOVER** was stopped for a traffic stop in Natchitoches, Louisiana. Circumstances during the stop dictated that a search of the vehicle be conducted. **HOOVER** was arrested for possession of marijuana, resisting an officer, and obstruction of justice. **HOOVER's** vehicle was also seized for having a manufactured hidden compartment. The electronically controlled compartment was behind the back seat of a Dodge Charger and capable of holding approximately ten kilogram sized packages.

HOOVER also had seven working cellular telephones in his possession.

17. On June 7, 2014, at approximately 9:47 p.m., (Session 10873) HOOVER called JENKINS from cellular telephone (318) 554-8300. HOOVER explained to JENKINS the circumstances surrounding his arrest and provided JENKINS with his new cellular telephone.

18. On June 12, 2014, agents were monitoring the Title III of JENKINS. There were a series of calls and a text message between HOOVER and JENKINS. Agents believe that JENKINS was supplied cocaine by HOOVER on that night.

19. On June 25, 2014, Western District of Louisiana United States Magistrate Judge Mark L. Hornsby issued a search warrant for 384 Main Street, Natchez, Louisiana. On July 1, 2014, at approximately 1:26 p.m., law enforcement personnel executed the search warrant at 384 Main Street. Upon entering the driveway law enforcement personnel observed HOOVER run into 384 Main Street from the front yard of the residence; HOOVER was apprehended by law enforcement inside the residence. Law enforcement could hear HOOVER flushing a toilet repeatedly as they were calling HOOVER out of his concealed location. A search of the residence resulted in the seizure of a gallon ziploc bag full of suspected Hydrocodone and Xanex pills, two loaded handguns, suspected drug ledgers, and a plastic shopping bag containing an unknown amount of U.S. currency. The handguns and the drug ledgers were located in HOOVER and FOREST's bedroom. Approximately seven pounds of

marijuana of was located in a truck behind the residence.

20. Based on the above facts and circumstances, your affiant believes that sufficient probable cause exists for the arrest of **Quincy Demon HOOVER** based on violation of 21 USC 846 Conspiracy to Distribute Cocaine and Crack Cocaine.

_____
Special Agent Paul Hursey
Drug Enforcement Administration

Sworn to and subscribed before me this 2nd day of July, 2014.

_____
Mark L. Hornsby
United States Magistrate Judge